Louis Ricardo BUTLER *v.* STATE of Arkansas

95-981                                    922 S.W.2d 685

Supreme Court of Arkansas
Opinion delivered May 28, 1996

*University of Arkansas at Little Rock School of Law Legal Clinic,* by: *Spencer R. Robinson,* Rule XV Law Student, and *Gerard F. Glynn,* Rule XV Supervising Attorney, for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Louis Ricardo Butler, appeals the order of the Pulaski County Circuit Court, denying transfer of his case to juvenile court. This interlocutory appeal is provided in Ark. Code Ann. § 9-27-318(h) (Repl. 1993). Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(12).

A felony information was filed in circuit court charging appellant and Myron Antonio McClendon with three counts of aggravated robbery, Class Y felony, in violation of Ark. Code Ann. § 5-12-103 (Repl. 1993), and three counts of theft of property, two being Class A misdemeanors and the other being a Class B felony, in violation of Ark. Code Ann. § 5-36-103 (Repl. 1993). The information reflects that the charges stem from three separate instances, taking place on July 7, 1994, July 10, 1994, and August 11, 1994, involving appellant and McClendon robbing three different pizza delivery personnel at gun point with the purpose of committing a theft. Appellant was born April 23, 1979, and was thus fifteen years of age at the time of the alleged offenses.

After the state filed the felony information, a delinquency petition was filed against appellant in juvenile court concerning the robbery which occurred on August 11, 1994. The record reflects

that the state mistakenly filed the last aggravated-robbery incident in juvenile court, not realizing that charges arising out of all three robberies had already been filed in circuit court. The state had also filed an unrelated delinquency petition alleging that appellant had committed the offenses of residential burglary, Class B felony, and theft of property, Class A misdemeanor, on July 13, 1994.

Appellant moved to transfer the charges pending in circuit court to juvenile court. The circuit court conducted a hearing on appellant's motion, during which hearing testimony was heard from appellant's parents, Mr. Louis Butler Sr. and Mrs. Lady Williams, appellant's counselor, Mr. Sanford Tollette, and the police officer who investigated the three robberies, Detective Todd Armstrong, of the Little Rock Police Department.

Mr. Butler testified that his son began having trouble when he and his mother were divorced in 1988, and that before the divorce, appellant had been in advanced classes at school. Mr. Butler stated that after the divorce, appellant had been placed in alternative schooling at the Joseph Pfeifer Kiwanis Camp, and that he had begun to show progress within three or four weeks. Mr. Butler stated that his son was a good kid and that he knew right from wrong. Mr. Butler expressed concerns for appellant's safety should he be sentenced to prison, and stated that sentencing appellant to prison would not help to rehabilitate him.

Mrs. Williams also testified that appellant had only begun to have trouble since the divorce of his parents, and that because of his troubles, she had put appellant in a program at Pinnacle Point Hospital, in addition to the Pfeifer camp, and she had attempted to place him in the New Futures program. Mrs. Williams stated that prison would not be a good place for appellant because he needs rehabilitation. Mrs. Williams concluded by saying that appellant was not a violent person, but when he consumes alcohol, his personality changes completely.

Sanford Tollette, director of the alternative classroom program for kids at risk at the Pfeifer camp, took the stand next on behalf of appellant. Mr. Tollette stated that appellant had been assigned to his program in November 1988, and that he had completed the thirty-day program. Mr. Tollette stated that appellant had continued to come back to the program over the next three years as part of the summer camp, and that he eventually became an honor camper.

Mr. Tollette stated that he felt appellant was a good kid with a good heart, and that the seriousness of the offenses had made an impression on him.

The last witness to testify at the hearing was Detective Armstrong, who described each of the robberies for the court. Detective Armstrong stated that on July 7, 1994, pizza was ordered from Pizza 4 Less and upon the driver's arrival, two black males — one armed with a shotgun and the other with a handgun — robbed the deliveryman of two pizzas and cash. Detective Armstrong stated that on July 10, 1994, pizza was again ordered from Pizza 4 Less and when the driver arrived, he was asked to come inside. The detective noted that on this occasion the robbery had taken place at appellant's father's residence. Once the driver was inside the residence, Detective Armstrong continued, the deliveryman was robbed of his pizzas with the use of a sawed-off shotgun. Regarding the third and last robbery, which occurred on August 11, 1994, Detective Armstrong stated that pizza was ordered from Pizza Hut and upon the driver's arrival, he was approached by two black males, one of whom was armed with a rock or brick and threatened the deliveryman. Upon the threat being made with the weapon, Detective Armstrong stated, the deliveryman fled his vehicle, while one of the suspects got into the vehicle and left. Detective Armstrong further testified that he had interviewed appellant concerning the crimes, and that appellant had confessed his participation in two of the three robberies. Before leaving the witness stand, Detective Armstrong identified appellant for the record.

At the conclusion of Detective Armstrong's testimony, the state submitted the two previously mentioned juvenile delinquency petitions against appellant as evidence, and the court received them into the record. The circuit court subsequently denied appellant's motion to transfer his case to juvenile court at a later hearing. Appellant now brings this interlocutory appeal.

In support of this appeal, appellant raises three points: First, that the circuit court erred in not dismissing the three counts of theft of property charged in the felony information, as they are not listed among those offenses enumerated in section 9-27-318(b)(1); second, that the circuit court erred in denying the motion to transfer the case to juvenile court as there was not clear and convincing evidence that appellant should be tried as an adult; and third, that the circuit court erred by failing to provide a sufficient

statement of the court's findings to demonstrate that each of the elements set out in section 9-27-318(e) was considered. We affirm the circuit court's ruling denying transfer to juvenile court as to the three counts of aggravated robbery, but we reverse the denial as to the three counts of theft of property.

## I. Jurisdiction of Non-enumerated Offenses

Appellant argues that because he was only fifteen years old at the time the offenses were allegedly committed, the circuit court did not have jurisdiction over the three counts of theft charged in the information because theft of property is not among those charges enumerated in section 9-27-318(b)(1). Appellee concedes this error. We agree that the denial of transfer as to the three charges of theft of property was error.

■ Section 9-27-318 specifically provides, and this court has consistently held, that the circuit court has jurisdiction over a juvenile aged fourteen or fifteen *only* when the juvenile is charged with one or more of the offenses enumerated in section 9-27-318(b)(1). Any other charges against the juvenile must be dismissed by the circuit court for lack of jurisdiction. *See, e.g., State* v. *Gray*, 319 Ark. 356, 891 S.W.2d 376 (1995); *Banks* v. *State*, 306 Ark. 273, 813 S.W.2d 256 (1991).

Appellant relies on *Banks*, 306 Ark. 273, 813 S.W.2d 256, in support of his argument. In *Banks*, the appellant, who was fourteen years of age at the time of the crimes, was charged with the offenses of aggravated robbery, attempted capital murder, theft of property valued at less than $200.00, and fleeing from arrest. We held that, given the juvenile's age, the circuit court only had jurisdiction over the appellant as to the charge of aggravated robbery, as it was the only one of the four charges facing appellant which was among those enumerated in section 9-27-318(b)(1). Because the circuit court did not have jurisdiction over the remaining three charges, we held that the charges should have been dismissed. In the case at hand, appellant is charged with three counts of aggravated robbery and three counts of theft of property. While aggravated robbery is one of the offenses enumerated in section 9-27-318(b)(1), theft of property is not. Our inquiry does not, however, end here.

Section 9-27-318(a) provides that if the prosecutor can file charges against a juvenile in circuit court, the prosecutor "may file

*any other criminal charges that arise out of the same act or course of conduct* in the same circuit court case if *after a hearing before the juvenile court* a motion to transfer is so ordered[.]" (Emphasis added.) Pursuant to this provision, the prosecutor in this case could have filed the theft charges in juvenile court and then moved the juvenile court to transfer the charges to circuit court, where they would be joined with the aggravated robbery charges. That, however, was not done.

Since the three theft charges are not among those enumerated in subsection (b)(1) of 9-27-318, and since the prosecutor in this case did not file the charges in juvenile court and then move to transfer them to circuit court, the circuit court never had jurisdiction of those charges. Based on our prior holdings, the three counts of theft of property filed against appellant in circuit court must therefore be dismissed.

## II. Sufficiency of the Evidence

Appellant argues that there was not sufficient evidence produced at the hearing for the court to find by clear and convincing evidence that appellant should be tried as an adult. We find no merit to this argument.

A circuit court's decision to deny transfer of an appellant's case to juvenile court will not be reversed unless it is "clearly erroneous." *See, e.g., Williams v. State,* 313 Ark. 451, 856 S.W.2d 4 (1993); *Vickers v. State,* 307 Ark. 298, 819 S.W.2d 13 (1991). Furthermore, it is the movant's burden to prove the transfer to juvenile court was warranted. *Williams,* 313 Ark. 451, 856 S.W.2d 4; *Pennington v. State,* 305 Ark. 312, 807 S.W.2d 660 (1991). This is a burden appellant has not met.

We recognize that pursuant to section 9-27-318(f), the determination that a juvenile should be tried as an adult must be supported by clear and convincing evidence. *See, e.g., Davis v. State,* 319 Ark. 613, 893 S.W.2d 768 (1995); *Sebastian v. State,* 318 Ark. 494, 885 S.W.2d 882 (1994). Clear and convincing evidence is defined as "that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established." *Cole v. State,* 323 Ark. 136, 140, 913 S.W.2d 779, 781 (1996) (quoting *Cobbins v. State,* 306 Ark. 447, 450, 816 S.W.2d 161, 163 (1991)).

Section 9-27-318(e) provides that the circuit court shall

consider the following factors when making the decision to retain jurisdiction or transfer the case to juvenile court:

> (1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

> (2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

> (3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

In this case, the circuit court announced its decision by stating that:

> I've gone back and reviewed the evidence in this matter, listened to the Court Reporter's matters, and reviewed the law on it. And after reviewing the facts of this case, there's no question in my mind but this case should not be in juvenile, based upon the circumstances of it, the Defendant's participation, et cetera.

From this statement, it appears that the circuit court took into consideration all the testimony and evidence presented at the hearing concerning the three factors listed in section 9-27-318(e), and found that the case should be heard in circuit court. It is of no consequence to appellant's argument concerning the circuit court's alleged failure to consider the second and third factors that the circuit court did not methodically list out each piece of evidence as it related to each specified factor. It is enough that the circuit court stated that it took into consideration all the evidence presented at the hearing in making its decision to deny transfer.

We have stated that although a circuit court must *consider* all the factors listed in section 9-27-318(e), the circuit court need not give each of the factors equal weight, and it is permissible to give substantial weight to the criminal information. *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502, *reh'g denied*, 304 Ark. 402-A, 805 S.W.2d 80 (1991). In fact, the criminal information, on its own, is sufficient to establish that the offense charged is of a violent and

serious nature, thus satisfying the first element listed in section 9-27-318(e). *Davis*, 319 Ark. 613, 893 S.W.2d 768; *Vickers*, 307 Ark. 298, 819 S.W.2d 13. Moreover, proof of each factor need not be introduced against the juvenile in order for the circuit court to retain jurisdiction. *Davis*, 319 Ark. 613, 893 S.W.2d 768; *Hogan v. State*, 311 Ark. 262, 843 S.W.2d 830 (1992). The fact that the offenses charged were serious in nature and committed with the use of violence is sufficient to warrant a denial of transfer of appellant's case to juvenile court.

Similarly, the use of violence in the commission of a serious offense is a factor sufficient in and of itself for a circuit court to retain jurisdiction of a juvenile's case. *Sebastian*, 318 Ark. 494, 885 S.W.2d 882; *Blevins v. State*, 308 Ark. 613, 826 S.W.2d 265 (1992). Although we have previously recognized that it is possible to commit the offense of aggravated robbery without the actual employment of violence, we find that was not the case in these three incidents. *See, e.g., Johnson v. State*, 307 Ark. 525, 823 S.W.2d 440 (1992). The circuit court in this case could easily have found that the evidence presented satisfied the first factor provided in section 9-27-318(e), and this factor alone would have been sufficient reason for the circuit court's denial of transfer.

Moreover, the fact that appellant may not have held a gun in each of the robberies is of little consolation to appellant as it does not change the nature of the charges pending against him. In fact, in *Guy v. State*, 323 Ark. 649, 916 S.W.2d 760 (1996), we stated that, "[i]t is of no consequence that appellant may or may not have personally used a weapon, as his association with the use of a weapon in the course of the crimes is sufficient to satisfy the violence criterion." *Id.* at 654, 916 S.W.2d at 763 (citing *Collins v. State*, 322 Ark. 161, 908 S.W.2d 80 (1995)). Detective Armstrong's testimony coupled with the factual basis set out in the felony information provided sufficient grounds for the circuit court to find that the offenses committed were serious and that violence was employed by the appellant during their commission.

We find that there is ample evidence from the record with which to affirm the circuit court's denial of transfer. Because the remaining charges against appellant consist of three counts of aggravated robbery, Class Y felony, the most serious level of offense in the State of Arkansas, and because violence was employed via appellant's use of deadly weapons to cause a threat of death or

serious physical injury to the victims, we cannot say that the denial of transfer as to the three counts of aggravated robbery was clearly erroneous.

## III. Factual Findings

Lastly, appellant argues that because the circuit court did not make specific findings of fact in its order, it is impossible to tell whether the court considered each of the factors set out in section 9-27-318(e), and because of this impossibility the circuit court erred in denying transfer. Appellant asserts that, due to the omission of factual findings, he has been denied a meaningful review of the circuit court's decision in violation of his rights under the Due Process Clause of the United States Constitution.

Appellant cites no Arkansas case law in favor of his position and relies solely on *Kent* v. *United States*, 383 U.S. 541 (1966) for this argument. Appellee asserts that appellant is precluded from raising this point on appeal because he did not raise this argument below. Appellant concedes that this issue was not ever brought to the attention of the circuit court and was thus not properly preserved below.

From our review of the record provided, it is clear that appellant did not raise this issue in the circuit court, nor did he at any time move the circuit court to detail its reasons for denying his motion to transfer. We have consistently held, and appellant agrees, that even constitutional issues will not be heard for the first time on appeal. *Wetherington* v. *State*, 319 Ark. 37, 889 S.W.2d 34 (1994).

## IV. Conclusion

We affirm the circuit court's denial of transfer as to the three charges of aggravated robbery, but we reverse as to the three counts of theft of property. We dismiss without prejudice the three charges of theft of property, as proper procedure was not followed in filing the charges and the circuit court was without jurisdiction to hear the charges.

Affirmed in part; reversed and dismissed in part.

ROAF, J., dissents.

DUDLEY, J., not participating.

ANDREE LAYTON ROAF, Justice, dissenting. In 1989, the

Arkansas General Assembly enacted Act 273 of 1989, which became known as the Arkansas Juvenile Code of 1989. A declaration of purpose for this legislation is found at Ark. Code Ann. § 9-27-302. It is important in the context of this appeal and warrants our reconsideration:

This subchapter shall be *liberally construed* to the end that its purposes may be carried out:

(1) To assure that *all juveniles brought to the attention of the courts receive the guidance, care and control, preferably in each juvenile's own home, which will best serve the emotional, mental, and physical welfare of the juvenile and the best interests of the state;*

(2) To preserve and strengthen the juvenile's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot adequately be safeguarded without such removal; and, when the juvenile is removed nearly as possible equivalent to that which should have been given by his parents; and to assure, in all cases in which a juvenile must be permanently removed from the custody of his parents, that the juvenile be placed in an approved family home and be made a member of the family by adoption;

(3) To protect society more effectively *by substituting for retributive punishment, whenever possible, methods of offender rehabilitation and rehabilitative restitution,* recognizing that the application of sanctions which are consistent with the seriousness of the offense is appropriate in all cases;

(4) To provide means through which the provisions of this subchapter are executed and enforced and in which *the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.*

Ark. Code Ann. § 9-27-302 (Repl. 1993) (emphasis added).

Since 1991, this court has been called upon numerous times to interpret the provisions of the juvenile code dealing with how we treat youth who are charged with criminal offenses. The General Assembly has in turn had the opportunity on several occasions to react to our holdings. I submit that this court and the General Assembly have so woefully failed to consider a significant portion of the stated purposes underpinning the juvenile code that this lan-

guage has become meaningless.

We have neither liberally construed the statute to the benefit of the emotional, mental, and physical welfare of the juveniles, nor even for the best interests of the state. We have failed to insure that methods of rehabilitation and restitution are substituted wherever possible, for retributive punishment, and we have surely failed to provide that juveniles are assured fair hearings and that their constitutional and other rights provided by this statute are uniformly recognized and enforced. We share this responsibility equally with our elected state representatives.

Today, we once again affirm a trial court's refusal to transfer a criminal case involving a juvenile to juvenile court. The trial court's ruling, and our affirmance, were foregone conclusions because of the prior holdings of this court, because of the weight of stare decisis, and because of the legislature's failure to revisit this legislation in light of our holdings. Children between the ages of 14 and 17 years are paying the price for our failures. We cannot even take comfort in the notion that the best interests of the state are being served, for many of these juveniles will return to our midst as adults, and the opportunity to use our best efforts to rehabilitate, guide, and care for them will have been lost.

The landmark case which has led us down this path is, of course, *Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991). In *Walker*, by a 4-to-3 decision, this court reached several significant holdings which have been repeatedly reavowed and reaffirmed since *Walker* — that a juvenile movant has the burden of proof when seeking to transfer a case from circuit court to juvenile court — that the trial court need not give equal weight to the three factors that the statute *directs* it to consider in determining whether to transfer a case — that the prosecutor is not even required to introduce proof on each of the three factors that the trial court is *directed* to consider — that the criminal information alone can provide a sufficient basis for the denial of a transfer to juvenile court — that a trial court does not have to make findings of fact or provide a rationale for its decision in a juvenile-transfer proceeding.

We have also held that juveniles "ultimately" charged and tried in circuit court are subject to the procedures prescribed for adults, and are not afforded the protections provided by the juvenile code, such as the requirement of parental consent to a waiver of right to

counsel. *See* Ark. Code Ann. § 9-27-317; *Ring* v. *State*, 320 Ark. 128, 894 S.W.2d 944 (1995); *Sims* v. *State*, 320 Ark. 528, 900 S.W.2d 508 (1995).

I am not unmindful of the fact that since 1991, the general assembly has twice amended Ark. Code Ann. § 9-27-318, which deals with waiver and transfer to circuit court, each time to the detriment of juvenile defendants. However, they have not seen fit to amend the stated purposes for the juvenile code. I suggest that they do so at the next opportunity. Until then, our decisions and their inaction are in direct conflict with these purposes.

I dissent.